## KING v. HUTCHINS.

Money received on notes pledged to secure a claim, which afterwards passed into judgment, will be treated as having been applied in satisfaction of the judgment, and not as the foundation of an action on the part of the pledgor, subject to be reduced by the judgment as a set off.

Interest should be cast on the notes so pledged, to the earliest day they can be shown to have been paid; also, upon the judgment to the same day; and upon the the excess of the former over the latter, the plaintiff is entitled to interest, to the rendition of his judgment.

If one give his note to another and pay it, for the consideration, among other things, that the payee agrees to pay certain sums for the maker, the latter may, upon the neglect or refusal of the payee to pay such sums, treat the contract as rescinded, and recover back the amount, in an action for money had and received.

And this he may do, although the payee have recovered a judgment upon the note so given, and satisfied the same by an execution.

A receipt in the common form is an admission which is evidence against the party giving it, but it may be shown by him to be against the truth, and to have been given for a fraudulent purpose, in which both parties to it participated, in any action between such parties.

Where the object of an action is to charge the defendant with moneys received by him, and the defence is to discharge him by showing the moneys to have been accounted for, the courts may appoint an auditor under the statute, authorizing such appointment in cases in which "the investigation of accounts and examination of vouchers are necessary."

The auditor may cause either party before him to be examined touching the matter in controversy, and unless it appear that such examination has transcended the limits fixed by law, it forms no objection to the report.

Depositions taken to be used on the trial of the case may be used at the hearing before the auditor.

An initial letter, which is commonly inserted between the christian and surname of a party, is no part of the name, and the omission of it is not a misnomer.

The defendant being indebted to one P., who was indebted in a like amount to the plaintiff, the three agreed to apply what P. owed the plaintiff, to pay what the defendant owed P. *Held*, that the plaintiff could recover the amount of the defendant, in an action for money had and received.

ASSUMPSIT. The action was commenced May 20, 1848. The writ contains four counts—for money had and received, &c.; for goods sold and delivered, &c.; for work and labor,

&c.; and for board and lodging, &c. The cause was sub-mitted to an auditor, who reported a balance due to the plaintiff, subject to the opinion of the court, upon facts reported by the auditor, as follows:

On the 27th of November, 1841, the plaintiff, Hiram King, gave his note to the defendant, Samuel Hutchins, for $545,09, payable on demand, with interest annually, which note he secured, at the time it was given, by a mortgage of personal property.

On the 3d of January, 1842, the plaintiff gave the de-fendant another note for $1,224,42, payable on demand, with interest, to Hutchins & Buchannan, a firm in which the defendant was a partner.

At the time this note was given, the plaintiff was much in debt, and has ever since been so. The note was made at the instance of Hutchins, and there were included in it, some notes which Hutchins & Buchannan held against the plain-tiff, and also about a hundred dollars, or a little over, due from the plaintiff upon a note to Abel Underwood, Esq.; a hundred dollars and some interest due from the plaintiff upon a note to the Grafton Bank; a hundred dollars and some interest due from the plaintiff on a note to one Timo-thy Shedd; and about ninety dollars and some interest due from the plaintiff on a note to Ira Goodall, Esq. The sign-ers, as sureties of the note to the bank, were called upon to pay it, and did pay it, long before the commencement of this suit, and the plaintiff paid them before the suit was commenced.

At the time the $1,224,42 note was given, the plaintiff placed in the hands of the defendant four notes against Isaac F. Allen and Abiel Deming, amounting to $300, principal, dated April 3d, 1841, and on interest from date, and also a receipt dated Nov. 26, 1841, given to the plaintiff by said Underwood, for two notes against said Allen and Deming, for $100 each, dated April 3d, 1841, and on inter-est from their date, which two notes he had lodged with

Underwood as collateral security for the debt to him, included in said $1,224,42 note; which notes and receipt, the plaintiff placed in the defendant's hands as collateral security for said $1,224,42 note. All of said six notes against Allen and Deming were good, and were payable at various times within three or four years from their dates, and were all paid to the defendant before the commencement of this suit, but the times of payment did not more particularly appear.

At the time these notes were placed in the defendant's hands, (viz, January 3d, 1842,) it was agreed between the plaintiff and him, that the personal property mortgaged to secure the $545,09 note should be sold at auction by Hutchins, and the avails applied to pay the $545,09 note, and that the residue, if any, should be applied on the $1,224,42 note; that a suit should be commenced on the last mentioned note, and an equity of redemption in some real estate belonging to the plaintiff attached on the writ, and that Hutchins should pay the debts to Underwood, Grafton Bank, Shedd and Goodall. One Jonathan B. Rowell was surety for King on the note to Mr. Goodall, and was sued thereon, and judgment recovered against him before the commencement of this suit. The suit was commenced and the equity of redemption attached on the 4th of January, 1842, and judgment was rendered at the February term, 1842, for $1,240,18, debt and cost, in favor of Hutchins & Buchannan against the plaintiff. The equity of redemption was sold on the execution, (issued upon said judgment,) on the first day of April, 1842, to the defendant, for $662,47, after deducting the fees upon the execution.

The personal property mortgaged as aforesaid, was sold by the defendant at auction, on the 13th of January, 1842, for $685,21, besides paying the expenses of the sale, amounting to $5. This sum of $685,21, after making proper allowances for interest, paid the $545,09 note, and there remained to be applied on said judgment $136,94. This

sum, with interest thereon to the date of the judgment, (February 12, 1842,) I consider applied as of February 12, 1842, in part payment of said judgment, according to the agreement of the parties. The $662,47, for which said equity was sold, I treat as applied in part satisfaction of the execution on the day of the sale, viz, April 1, 1842, and there remained due upon the judgment, (after applying the two sums aforesaid,) $449,30 unpaid, unless paid by the avails of the Allen and Deming notes.

There never was any particular application of said notes in payment of the judgment, except such as results by operation of law, from the facts before stated. The note for $1,224,42 was payable, as before stated, to Hutchins & Buchannan, and the judgment was recovered in their name, and the Allen and Deming notes were placed in Hutchins' hands as collateral security for the $1,224,42 note.

If upon this state of facts the law would apply the Allen and Deming notes, when collected, in payment of the judgment, the judgment should be treated as paid, and should not be allowed as an offset, and in that case the balance only of the plaintiff's first item, after deducting the balance of the judgment, should be allowed. In that case I submit to the court the mode of computing interest upon the Allen and Deming notes, and also upon the $449,30 of the judgment remaining unpaid April 1, 1842, so as to find a just balance. In stating the account, I cast interest on said Allen and Deming notes from their date to the date of the writ, and on said sum of $449,30 from April 1, 1842, to the date of the writ, and said $449,30, with interest so cast, constitutes the $614,20 allowed as an off set. On the 10th of April, 1848, Hutchins & Buchannan executed a written assignment of the balance of the judgment to Hutchins.

The sum of about $100 and interest due Mr. Underwood, and included in said $1,224,42 note, the defendant paid. The notes to the Grafton Bank, Shedd, and Goodall, he has

not paid. The three last notes constitute the 15th, 16th and 17th items in my report, and are allowed.

So late as the 1st of April, 1842, the transactions between the parties had been in good faith, and without any fraudulent intent on the part of the plaintiff. On that day, at the suggestion of the defendant, and with an intention to prevent the plaintiff's creditors trusteeing the defendant, the plaintiff gave a receipt subjoined to a bill of the articles of personal property sold at said auction, as follows:

" Received pay for the above and foregoing sales of property, of Hutchins & Buchannan and Samuel Hutchins, by allowance on claims they hold against me, and also for four notes signed by Abiel Deming and Isaac F. Allen, dated April 3, 1841, said notes amounting in all, at the date of them, to three hundred dollars; also for a receipt I sold them against Abel Underwood, for notes I left with him as collateral security, in full.

HIRAM KING.

April 1, 1842."

King also made statements after said first day of April, 1842, designed by him to mislead his creditors, and to induce them to believe that the defendant had no property belonging to the plaintiff in his hands, and that he still owed the defendant more than he could pay. Such statements were made to a deputy sheriff, who had an execution against the plaintiff, and was endeavoring to ascertain if he could not obtain payment of it from the defendant.

There was no time agreed on within which the debts to the bank, Shedd, or Goodall, were to be paid.

The $545,09 note, and the $1,224,42 note, were the only claims Hutchins and Hutchins & Buchannan had against the plaintiff on the 3d of January, 1842, and King has received nothing for the Allen and Deming notes, and the avails of the personal property, except in the application of them, as aforesaid, to said $545,09 note, and to the judg-

ment, so far as the facts warrant an inference of such ap=
plication.

The plaintiff offered several depositions, and among them
the deposition of J. B. Rowell, taken in the State of Illi-
nois. The notice of the caption was served Nov. 5th, and
the caption was Nov. 26th, 1849. The notice was of the
taking at the dwelling house of Joseph Moore, Esq., and
the taking was at the dwelling house of Joseph H. Moore,
Esquire, and the defendant was not present at the taking.
The defendant objected to all the depositions, on the ground
that depositions could not be used before an auditor, and to
the deposition of Rowell, on the ground that the notice was
not sufficient; and on account of the variance between the
notice and caption, as to the place of taking. The deposi-
tions were all read, but I find the evidence sufficient, inde-
pendent of Rowell's deposition, to prove the facts upon
which that deposition has any bearing, and none of the
depositions affect the items numbered in my report from 3
to 14 inclusive.

The 14th item in the report accrued as follows: One
Pennock owed the plaintiff $2,76, and the defendant owed
Pennock that sum, and the parties applied what Pennock
owed the plaintiff to satisfy Pennock's claim against the de-
fendant. The question is submitted to the court whether
this item can be allowed under any count in the declaration.

*Morrison*, with whom was *Goodall*, for the plaintiff.

I. The plaintiff must recover the excess of the Allen
and Deming notes over the balance of the judgment, unless
precluded by the receipt of April 1, 1842.

II. He is not thus precluded. For the receipt is but
*prima facie* evidence of satisfaction, and the auditor finds
against it. *Morse* v. *Shattuck*, 4 N. H. Rep. 229; *Pritchard*
v. *Brown*, 4 N. H. Rep. 397; 1 Greenl. Ev. 353 and 246.
It is not any better or stronger for being fraudulent against
the plaintiff's creditors. If such fraud have any effect be-

tween the parties to the contract thus fraudulent, it operates against him who sets up the contract, and so, of course, against the defendant, if the receipt be regarded as a contract. The maxim, *in pari delicto, potior est conditio defendentis*, defeats the claim of the party who seeks to enforce the illegal agreement, who is in this case the defendant. *Wearse* v. *Pierce*, 24 Pick. 141. And the receipt is not a contract, but merely a written admission made at the defendant's suggestion, and he cannot insist upon it as an estoppel. *Davis* v. *Saunders*, 11 N. H. Rep. 259.

III. There is not the slightest ground for holding that the plaintiff is barred of his claim by reason of his statements to the deputy sheriff. 1 Greenl. Ev. 236.

IV. The plaintiff's note of January 3, 1842, for the sums to be paid to Shedd, Goodall, and to the Grafton Bank, was, under the circumstances, equivalent to money. *Whitcomb* v. *Williams*, 4 Pick. 228; *Willie* v. *Green*, 2 N. H. Rep. 333; 2 Greenl. Ev. 107.

V. The plaintiff delivered to the defendant money, or its equivalent, to be paid to Shedd, Goodall, and to the bank. The defendant unreasonably neglected to apply it, and is therefore liable in this suit. *Snow* v. *Prescott*, 12 N. H. Rep. 527; *Fuller* v. *Little*, 7 N. H. Rep. 345; *Strong* v. *Bliss*, 6 Met. 397; 2 Greenl. Ev. 187.

VI. The deposition of Rowell was admissible. Rev. Stat. ch. 188, § 4; Act of December 26, 1848; *Peck* v. *Wilson*, 14 N. H. Rep. 587; *Kingsbury* v. *Smith*, 13 N. H. Rep. 109.

VII. The arrangement between the parties was as if Pennock had paid the defendant $2,76 to the plaintiff's use. *Hutchins* v. *Gilman*, 9 N. H. Rep. 359; *Heaton* v. *Angier*, 7 N. H. Rep. 397, and cases cited under the 4th point.

*Hibbard*, for the defendant.

I. All the items of the plaintiff's specifications except-

ing those from the 3d to the 14th, inclusive, were incompetent to be considered by the auditor, the defendant objecting, and should be disallowed. The consideration of them did not involve " an investigation of accounts nor an examination of vouchers." Rev. Stat. ch. 189, § 1 ; *Ranlet* v. *Herren*, recently decided in Grafton county, (not reported.)

The plaintiff ought not to have been permitted to testify to these items as a witness in chief, though this objection we suppose to be included in the first, and implied by it. *Stevens* v. *Hall*, 6 N. H. Rep. 508; *Mann* v. *Locke*, 11 N. H. Rep. 246; *Brewster* v. *Edgerly*, 13 N. H. Rep. 275.

This proceeding, like the taking of depositions, is by virtue of the statute solely, and the statute is to be construed strictly.

II. The plaintiff's depositions should not have been submitted to the auditor. The use of depositions before an auditor is not authorized by law; Rev. Stat. ch. 188, § 13, providing that depositions may be taken in civil cases, " to be used on trial." This was not a *trial.* The statute authorizing auditors contemplates no such proceeding.

III. The deposition of Jonathan B. Rowell was inadmissible because the notice did not truly state the place of caption. It can make no difference, that the auditor, having considered this deposition, says he would have deemed the evidence sufficient to have warranted his findings without it, or that its contents did not affect certain items.

IV. The plaintiff cannot recover the 15th, 16th, and 17th items, being the sums due to Goodall, Shedd, and the Grafton Bank—because,

1st—These sums were all included in the note from him to the defendant, for $1,224,42, on which a judgment was recovered, February 12, 1842. They are *res judicatæ.* The judgment is conclusive. The plaintiff is estopped from saying that all the sums included in that judgment are not due from him to the defendant. *Tilton* v. *Gordon*, 1 N. H.

King *v.* Hutchins.

Rep. 33; *Farmer* v. *Stewart*, 2 N. H. Rep. 101; *Smith* v. *Whitney*, 11 Mass. Rep. 445.

Of this judgment, made up in part of these sums, $614,20 is still unpaid. The defendant should not be compelled to pay them until he has received the amount of the plaintiff.

2d—The agreement between the parties in regard to these notes has been partially executed. The defendant has applied part of the fund to pay the note to Underwood. If the plaintiff is entitled to any remedy in this particular, it could be enforced only under a special count upon the contract. All the counts in this writ are general. 2 Greenl. Ev. 104, § 124, and cases there cited.

3d—No time was agreed within which they were to be paid. The plaintiff has not paid those debts. Goodall, Shedd, and the bank, should bring suits, if any body.

4th—Because these and all other items of the plaintiff's claim are affected by his fraudulent intent and practices disclosed in the report.

V. The plaintiff can recover nothing covered by the contract evidenced by the receipt, given with the fraudulent intent and purpose found, by the report dated April 1, 1842. The defendant possesses the property, and must hold it as to the plaintiff, who will not be permitted thus to allege his own turpitude and take benefit. The defendant sets it up as fair and *bona fide*, according to its terms, and stands upon it. The plaintiff cannot impeach it by imputing fraud. *Goodwin* v. *Hubbard*, 15 Mass. Rep. 212; *Drinkwater* v. *Drinkwater*, 4 Mass. Rep. 354; Judge *Trowbridge's* Opinion, 3 Mass. Rep. 581; *Divoll* v. *Leadbetter*, 4 Pick. 219; *Sumner* v. *Murphy*, 2 Hill (S. C.) 488; *Hendrick* v. *Mount*, 2 South. 738, cited in 2 U. S. Dig. 455, §§ 151-5; *Brewer* v. *Hindman*, decided in Grafton county, December term, 1845-6—not reported.

The plaintiff has availed himself of this ground, used it against creditors, and derived benefit from it, as shown by his transactions with the officer, D. Patterson, who was at-

tempting to collect an execution against him. Money paid under a mistake of facts cannot be recovered back, where the plaintiff has derived a substantial benefit from the payment. 2 Greenl. Ev. 102, § 123. Much less can it be where there has been a fraud. He is estopped by his declarations and admissions to Patterson and others, from saying that anything was due him from the defendant, or that he had anything in the defendant's hands.

Nor will it avail the plaintiff to allege that there was no consideration for this contract. If there was none, it would not relieve him from the consequences of his fraud.

Fraudulent contracts generally are without consideration. Being false, they can have no real consideration. The want of consideration is one of the elements of the fraudulent transaction. The law regarding them in this light will not interfere to aid either. *Potior est conditio possidentis.* But here there was in fact some consideration, apart from the effect of the fraud, and as between the parties, the law would in no case inquire into the adequacy of it. *Osgood* v. *Franklin,* 2 Johns. Ch. 122, 123 ; *Hubbard* v. *Coolidge,* 1 Met. 84–93 ; *Allen Petitioner,* 15 Mass. Rep. 58–65 ; *Brewer* v. *Hyndman,* already cited; *Amherst Academy* v. *Cowls,* 6 Pick. 427, 432.

This fraudulent disposition of the plaintiff's property was made before the suit was brought. It makes no difference whether it was made when the property was originally put into the defendant's hands, or afterwards. It stands in the place of the first contract, whether we regard that as merged in this later one, or the first as rescinded, and the last substituted for it. That ceased when this was made. It carries with it all the incidents of a fraudulent contract.

A contract originally fraudulent may be purged by matter *ex post facto,* and become valid, not only as to the parties, but as to third persons—creditors. *Bank* v. *Haskins,* 3 Met. 332 ; *Harrison* v. *Phillips Academy,* 12 Mass. Rep. 456. These relate to contracts concerning real estate.

*Thomas* v. *Goodwin*, 12 Mass. Rep. 140; *Hutchins* v. *Sprague & Tr.*, 4 N. H. Rep. 469, relating to personal property.

*A fortiori*, it must be possible to convert an honest contract into a dishonest one as between the parties only. The receipt was evidence of a contract that the defendant would keep all the property named, as his own, from that time forth; that it was all paid for. This was the bargain held out to defraud creditors. The plaintiff is bound by it, as between him and the defendant.

The contract, in terms, covered the Allen and Deming notes, which make the first item of the plaintiff's claim, as well as the avails of the sale of property, which the report finds applied on the defendant's judgments. It is apparent that it also covered the items 15, 16, and 17, of the plaintiff's claim, because these made a part of the $1,224,42 note, which the Allen and Deming notes had been given to secure. The note was sued by writ returnable February term, 1842, when judgment was rendered. This receipt was dated April 1, 1842, soon after the rendition of judgment. The plaintiff's statements to the deputy sheriff indicate that not only the items in question, but all his rights, credits and property in the defendant's hands, were covered by this arrangement. If so, he should recover nothing. The plaintiff is estopped from setting up his own fraud to avoid this contract. *Kimball* v. *Blaisdell*, 5 N. H. Rep. 533; *Somes* v. *Skinner*, 3 Pick. 52.

VI. The 14th, or Pennock item, cannot be recovered, because all the counts are general. The plaintiff should have had a special count to cover this.

VII. The balance of the judgment was properly allowed in offset:

1st—Because it is a proper matter of set off. *Hutchins* v. *Riddle*, 12 N. H. Rep. 464; *Tuttle* v. *Bebe*, 8 Johns. 152; *Barnet* v. *Barnet*, 8 Pick. 342; *Hathaway* v. *Russel*, 16

Mass. Rep. 474, and cases there cited; Cambridge v. Whit-comb, 1 Chip. (Vt.) 180.

"Where the plaintiff procured insurance on a vessel owned by himself and another, and recovered of the insurers of a partial loss, it was held that the insurers were entitled to set off a former judgment against the plaintiff individually." Hazelhurst v. Bayard, 3 Yeates, 152; cited in 3 U. S. Dig. 427, § 277.

The statute of set off is an equitable statute, and is to be construed liberally. It has regard to the real and not merely the nominal parties. See 12 N. H. Rep. 464, already cited.

2—Apart from the set off, the judgment ought to be allowed against these claims, because it shews such to have been the understanding and agreement. It was necessarily so from the origin and nature of the claims.

Woods, J. Several questions are presented by the facts found by the auditor's report, and submitted:

1. On the third of January, 1842, the plaintiff gave his note to the defendant, payable to Hutchins & Buchannan, for $1,224,42, for considerations and purposes indicated in the report, and to which we shall have occasion, in the sequel, to advert more particularly. At the same time he gave him, or placed at his control, several notes of Allen and Deming, amounting in all to $500, besides interest, as collateral security for the note of $1,224,42. To provide further for the payment of this note, it was arranged, that the defendant should have the surplus avails of certain personal property, mortgaged to secure an earlier note from the plaintiff to him, and should also bring an action, and attach a certain equity of redemption, which the plaintiff had in some real estate. In pursuance of this arrangement, the mortgaged chattels were sold, and a surplus of $136,94 remained, after discharging the mortgage and expenses of sale. The equity of redemption was also sold, to satisfy the judgment recovered upon the note of $1,224,42, in

April, 1842, and the clear sum of $662,47 was realized. These sums being applied upon the judgment, with proper allowances of interest, there remained due $449,30. To pay this sum, the money received by the defendant upon the Allen and Deming notes, which were paid in full, was strictly applicable and must be treated as having actually been so applied, in an equitable adjustment of the claims between the parties. The excess, after satisfying the judgment, must clearly be regarded as money held by the defendant for the plaintiff's use. There seems to be no reason, upon this state of facts, why an action of assumpsit for money had and received, does not lie to recover it.

2. When the plaintiff gave the note of $1,224,42 to the defendant, he was indebted in several sums of money, specified in the report, to the Grafton Bank, Mr. Underwood, Mr. Goodall, and Mr. Shedd. The amount of these several debts constitute a part of the sum of $1,224,42, and the defendant promised to pay them, and that was a part of the consideration for which the note was given. The debt due to Mr. Underwood he did pay, the others he did not; but, on the contrary, before the commencement of this suit, the sureties upon the note to the bank, were called on to pay the debt, and did pay it, and the plaintiff paid them; and the surety upon the debt to Mr. Goodall, had been sued, and suffered judgment. The debt to Shedd, was also left by the defendant unprovided for.

The defendant having, from the surplus of the mortgaged property, from the Allen and Deming notes, and from the sale of the equity of redemption, by means of an action and a judgment, instituted by an agreement of the parties for the express purpose, received into his hands money, which he agreed, when received, to apply to the payment of these debts, the question arises, upon his omission to pay them under the circumstances of this case, whether the plaintiff can recover the money in the present form of action.

On this head, it is a fixed principle of law that the merits

of a judgment can never be impeached by a counter action by the judgment debtor. The plaintiff cannot, therefore, in an action for money had and received, recover the money in question, upon the ground that the note, which was the foundation of that judgment, was wholly, or in part, without consideration, or that it was given for a consideration which failed.

But if one gives his note for a sum of money, the consideration of which is that the payee shall do a certain thing, the latter is surely not absolved, by bringing an action and recovering a judgment upon the note, from performing the act, the undertaking of which formed the consideration of the note. His refusal would lay the foundation of an action upon the contract.

If one, having received money in payment of his undertaking to perform an act, refuse to perform it, the other party has the right to treat such refusal, or any degree of neglect that shall be equivalent to a refusal, as a rescission of the contract, and bring his action to recover back the price he has paid. This proposition is fairly involved in the decision of the case of *Snow* v. *Prescott*, 12 N. H. Rep. 535, which was an action to recover the price of chattels which had been delivered by the plaintiff to the defendant, and which the defendant had agreed to indorse on a note which he had held against the plaintiff, but which he did not indorse. It was held, in derogation of the earlier case of *Tilton* v. *Gordon*, that he might recover, notwithstanding the defendant had previously brought his action on the note, in which he recovered for the whole sum.

The defendant here promised the plaintiff to pay certain debts which the latter owed, and cannot deny that he was paid by the plaintiff for so doing. Instead of performing his promise, he has broken it. The plaintiff, instead of seeking redress in a special action on the case, on the promise, chooses to treat the contract as rescinded, and to recover back what he has paid.

That the evidence amounts to showing a breach of the contract has been assumed. But, in the absence of any proof of the time when the defendant was to have paid the debts in question, and of the time when money sufficient to satisfy the judgment was received by him, which fact lay within his own knowledge, we will not surmise that such delay as the case shows, was, owing to any cause inconsistent with what has been assumed.

We, therefore, think the action well founded, as respects this item in the plaintiff's claim.

3. The next inquiry relates to a receipt, signed by the plaintiff, which the defendant interposes against the action, so far as relates to the two items which have been considered. It purports to acknowledge payment for the property sold at auction, and the Allen and Deming notes, by an application of the amount on claims held by Hutchins & Buchannan and the defendant against the plaintiff. This receipt is contradicted, and its operation met by facts disclosed in the report, from which it appears that it was given at the suggestion of the defendant, for the purpose of concealing the funds he held, belonging to the plaintiff, from his creditors, lest they should be reached by a process of foreign attachment. And it is said that this explanation, by reason of the turpitude of the transaction, the plaintiff ought not to be permitted to offer; and that, therefore, the receipt must stand as uncontradicted evidence of the fact stated upon its face.

If any innocent party had been misled by the receipt, and induced to give credit to any one by reason of it, there might indeed be some ground for denying to the plaintiff the privilege of showing that it was a sham, and an admission against the truth. But if any one has been so deceived, it is not he who now seeks to take advantage of the admission. It was made at his suggestion, for a purpose entirely foreign to the one for which he seeks to use it, and against what he perfectly well knew to be the truth at the time.

Some facts are admitted, because they are believed to be true, and the admission is evidence of their truth, to be considered with other evidence. Other admissions are made, for the express purpose of estopping the party from showing the contrary, whether true or not. As the receipt in controversy clearly appears not to have been of the latter description, we know of no rule of law which precludes the party from showing that it was against the truth, even though it appear to have been made for an improper purpose. Stark. on Ev. P. IV. 29–34. This applies, also, to the plaintiff's admissions to the deputy sheriff.

Where gifts or conveyances are made for fraudulent or other illicit purposes, the law will not generally disturb the party in possession; and courts do not lend their aid to enforce agreements against the principles or the policy of law, or having injustice or fraud for their object. But the receipt in question is evidence neither of a gift for an unlawful purpose, nor of an unlawful agreement. The plaintiff is seeking neither to avoid such a gift nor to enforce such a contract, by averring and proving the truth to be contrary to his written admission. The money came into the defendant's hands for a purpose entirely lawful and proper. The receipt is exhibited as evidence that it has been fully accounted for. The plaintiff seeks merely to show that the paper is not conclusive on that head, because it was executed and given for another purpose; for an object in which the two parties participated, and whether lawful or not, is a question which in no way applies to the real matter of inquiry.

4. By chapter 189, section 1 of the Revised Statutes, the courts are authorized to appoint auditors, whenever it shall appear that "an investigation of accounts or an examination of vouchers is necessary in any action." But the defendant contends that some of the items in the specification were not proper to be submitted. Without dwelling upon the difficulty there might sometimes be, in submitting a part only of the items in a specification to an auditor, we

think the receipt which has been subject of comment in this case, was a voucher fit to be submitted to the examination of an auditor, and that it was applicable, for it was sought by the defendant to be applied to the items, to the submission of which he excepts. Besides, the action had for its precise and leading object, to compel the defendant to account for the various sums of money that had passed to him from the plaintiff, as well as those sums that had accrued from property entrusted to him to sell, and to apply to the payment of the notes due from the plaintiff to him, as those sums which, having been entrusted to the defendant for specific objects, which had failed, the plaintiff claimed to charge him with. In every aspect, the action required an investigation of accounts and examination of vouchers.

5. The same chapter of the statute (§ 6) makes it the duty of either party to answer, upon oath, such interrogatories relating to the matter in controversy, as may be pertinent and material, and visits his refusal to do so with the consequences of a contempt. It does not appear that he answered any other than such interrogatories, nor what, in fact, were answered by him. The statute appears to allow a wide range, and yet there are limits, no doubt, to the range, which an examination of a party by an auditor may take. But there is nothing apparent in this case, which requires that these limits should be indicated. The argument of the defendant, indeed, seems, in conceding that this exception was involved in that which related to the reference of the case to the auditor at all, to admit that the examination was not improperly conducted, with respect to the subject-matter of it.

6. An objection is made that depositions taken, to be used on the trial of the cause, were used before the auditor. The investigation, by the auditor, must be considered as itself the trial, or at least a part of the trial, within the meaning of the statute, which provides for taking and using depositions on the trial of civil causes. The long and imme-

morial practice of making this use of depositions must be held to be a construction of the statute to that effect, too well established to be broken in upon.

7. The deposition of Rowell was taken in the State of Illinois, November 26th, and the notice was served on the 5th, leaving twenty days intervening, which, by the rule of the court, is sufficient.

8. Another objection to the deposition is, that it was notified to be taken at the house of Joseph Moore, Esq., and was taken at the house of Joseph H. Moore, Esq., the defendant not being present.

This raises a question of some practical importance, whether the omission of the initial letter between the christian and surname is a variance. The authorities on the subject are traced to the time of Lord *Coke,* who lays it down that one can have but one christian name, and that he may, at his discretion, use the one which he received in baptism or at confirmation. But this rule, to conform with subsequent authorities, must be taken with a modification, and the one name may be made up of a plurality of names. As in *Arbounin* v. *Willoughby,* 1 Marshall 477, where the defendant was sued by the name of *William,* his whole name being *Hans William,* Lord Chief Justice *Gibb* observed, in effect, that the omission was material, and made the rule absolute to set aside the proceedings on that ground. Also in *Commonwealth* v. *Hall,* 3 Pick. 263, *Morton,* J. " The roll of White's company contained the name of Charles Hall, but not the name of Charles Jones Hall. Charles Jones is the respondent's name. It needs no argument to prove that *Charles* and *Charles Jones* are different names. In the case of *Hutchins* v. *Gibbie,* 2 Chit. 335, where the plaintiff's name was stated, in the commencement of the declaration, to be James Toll Hutchins, and the defendant demurred specially that he was named in the sequel as " said James," it was held sufficient; because *non constat* that Toll was not part of the surname. These cases pro-

ceed upon the ground that when the christian name by which the party is known is composed of a plurality of names, they must be taken together as essential parts of the one christian name. *Commonwealth* v. *Perkins*, 1 Pick. 388.

But there is another class of cases in which between the christian and surname there were interposed one or more initial letters, and it did not appear what those letters stood for, if for any thing.

In *Keene* v. *Meade*, 3 Pet. S. C. Rep. 1, a commission had been issued and depositions taken under it. In the commission the name of the original plaintiff was written Richard *M.* Mead, which in fact was Richard *W.* Meade, and was so in the return of the commission. The reading of the commission was opposed on account of the variance.

Mr. Justice *Thompson*, in delivering the opinion of the court, observes, " It may well be questioned whether the middle letter formed any part of the christian name of Meade. It is said the law knows only one christian name, and there are adjudged cases strongly countenancing, if not fully establishing that the entire omission of the middle letter, is not a misnomer or variance ; and, if so, the middle letter is immaterial, and a wrong letter may be struck out or disregarded."

In *Franklin & a.* v. *Talmadge*, 5 Johns. 84, a deed was, on trial, offered in evidence conveying the *locus in quo* to Abraham Franklin, Samuel Franklin, and William T. Robinson. The defendant's counsel objected to the deed, on account of the variance as to the name of Robinson. The plaintiff's counsel offered to show that he was known by the name of William Robinson, as well as by that of William T. Robinson, and was called sometimes by one name and sometimes by the other. The court held " the addition of the letter T, between the christian and surname of one of the plaintiffs, did not affect the grant, which was to be taken benignly for the grantee. It was no part of his chris-

tian name, for the law knows only of one christian name. (Co. Lit. 3 a; 1 Lord Ray. 562; Viner. tit. Misnom. C. 6, pl. 5, 6.) And it was perfectly competent for the plaintiff to have shown, if necessary, that one of the plaintiffs was known as well with as without the letter T. in the middle of his name, though even that was not requisite in the first instance, nor unless made necessary by testimony on the part of the defendant."

To a like effect was the case of *Rosevelt* v. *Gardner*, 2 Cowen 463, in which the omission of the initials V. S. from the name of Cornelius V. S. Rosevelt was held to be immaterial, because "the V. S. were no part of Cornelius Rosevelt's name."

To the same point are the cases of *Alexander* v. *Wilmarth*, 2 Aik. 413, and *Isaacs* v. *Willey*, 12 Vermont Rep. 674. In the last-named case, *Redfield*, J., remarks: " I do not find any case in which it has been decided that a *middle letter* is any necessary part of the name ;" and proceeds to distinguish the cases in which there are two or more christian names, from those in which there is only the initial letter interposed between the christian and the surname.

We think that a man may be known by two or more names, which, taken together, constitute his christian name. But that it lies not with any one to say that he is commonly known by a name composed of an appellative word, preceded or followed by a letter only ; and we think that, in reading, the initial letter may be omitted, as no part of the name or word by which the person is known. This exception, therefore, fails.

9. A question is made whether, in this action, the plaintiff may recover a small amount which, being due from Pennock to the plaintiff, was, by the consent of all the parties, used and applied to pay a like amount which the defendant owed Pennock. In other words, Pennock, having in his hands money belonging to the plaintiff, the defendant received the benefit of it. In this aspect, the present form of action

King *v.* Hutchins.

would seem to be appropriate. Or, as in the case of *Heaton* v. *Angier*, 7 N. H. Rep. 397, the plaintiff released Pennock and took the defendant for the debtor in his place. By the principle of that decision, he could not recover of Pennock. He must recover of Hutchins, if at all; and it would be difficult to find a more appropriate remedy than the present form of action; for the consideration which passed to Hutchins was money which Pennock had, belonging to the plaintiff. *Willie* v. *Green*, 2 N. H. Rep. 333. In short, it was arranged and agreed that Pennock's money, in the hands of Hutchins, should remain there for the use of the plaintiff, and be by the defendant had and received for the plaintiff's use.

10. The principle upon which the auditor seems to have cast the interest was correct. It does not appear when the Allen and Deming notes were paid, except that it appears that they were paid before this action was commenced. Interest was cast to the date of the writ, and the defendant was made accountable for it, which was sufficiently favorable to him.

Interest was cast upon the balance due upon the defendant's judgment against the plaintiff to the same point of time, and then the balance of the judgment, together with the interest thus found, was deducted from the amount of the Allen and Deming notes and interest. The defendant was accountable for the just amount of the Allen and Deming notes, at the date of their payment. So was he entitled to the balance of the judgment due to him, and interest thereon at the date of the payment of the notes. Interest should be cast on the balance of the Allen and Deming notes, after deducting the unpaid remainder of the defendant's judgment, and interest on that balance, cast to the time of the rendition of the judgment in this case.

Upon the facts contained in the report, there should be judgment thereon.

*Judgment on the report.*